UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BOY RACER, | ) | Case No.: C 11-02834 LHK (PSG) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING-IN-PART** |
| v. | ) | **PLAINTIFF BOY RACER, INC.'S** *EX* |
| | ) | *PARTE* **APPLICATION FOR LEAVE** |
| | ) | **TO TAKE LIMITED DISCOVERY** |
| JOHN DOES 2-52, | ) | **PRIOR TO RULE 26(F) CONFERENCE** |
| | ) | |
| Defendants. | ) | **(Docket No. 3)** |
| | ) | |

    Plaintiff Boy Racer, Inc. ("Boy Racer") applies *ex parte* for leave to take expedited and limited discovery prior to the Fed. R. Civ. P. 26(f) conference. In *Boy Racer, Inc. v. Does 1-52*, Case No. 11-2329, this court granted Boy Racer's motion for leave to take limited discovery as to Doe 1 only, and ordered Does 2-52 be severed and reassigned to an Article III judge.[1] Does 2-52 were severed and assigned the new case number above. Judge Koh is the presiding judge in this severed matter and any discovery matters have been referred to the undersigned.[2]

    In the order granting-in-part Boy Racer's motion for leave to take limited discovery as to Doe 1 only, the undersigned noted that the motion raised the same issues as those recently addressed by the court in response to a near-identical motion for leave to take expedited discovery in *Diabolic*

---

    [1]     *See* Docket No. 8.

    [2]     *See* Docket No. 7.

*Video Productions, Inc. v. Does 1-2099.*[3] There, the undersigned granted leave to take expedited discovery, but only as to Doe 1. The court severed Does 2-2,099 and ordered the claims against Does 2-2,099 be reassigned to an Article III judge with the recommendation that the claims against Does 2-2,099 be dismissed without prejudice and, if re-filed within 20 days, deemed a continuation of the original action for purposes of the statute of limitations.

In *Diabolic,* the undersigned found that the copyright owner had not adequately explained how or why the peer-to-peer architecture of the BitTorrent protocol differed from other file-sharing protocols considered in *Leface Records, LLC,*[4] *Interscope Records,*[5] *BMG Music,*[6] or *Twentieth Century Fox Film Corp.*[7] In each of those cases, the peer-to-peer nature of the protocol was insufficient to justify joinder of dozens of otherwise unrelated defendants in a single action.

As previously discussed in *Diabolic*, before allowing expedited discovery to uncover the identity of unnamed defendants, the district courts of this circuit must determine whether either of two conditions applies. The first is whether the requested discovery would fail to uncover the identities sought.[8] The second is whether the claim against the defendant could be dismissed.[9] As to the first *Gillespie* condition,[10] whether or not the individuals identified are ultimately liable under

---

[3] *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 16).

[4] No. 5:07-cv-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

[5] No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004).

[6] No. 06-01579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. Jul. 31, 2006).

[7] No. C 04-04862, Docket No. 12 (N.D. Cal. Nov. 16, 2004).

[8] *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980); *see also Columbia Ins. Co. v. SeesCandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from [ISP] to ISP, with little or no hope of actually discovering the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances.").

[9] *See id.* at 642.

[10] *See id.*

Boy Racer's theory of infringement, the court is once again satisfied that the discovery sought here would uncover the identities that Boy Racer seeks. Boy Racer seeks leave to subpoena various Internet Service Providers ("ISP") associated with certain IP addresses to produce the names, addresses, email addresses, phone numbers, and Media Access Control numbers associated with each IP address alleged to have conducted infringing activity. The Hansmeier Declaration explains that Media Copyright Group, LLC's proprietary file sharing forensic software captured the unique IP address of each Doe Defendant. If provided with the IP address and the date and time of the infringing activity, the ISP can identify the Doe Defendant since the information is contained in its subscriber activity log files.

To address the second *Gillespie* condition and to distinguish the technical architecture of BitTorrent from those file-sharing protocols which other courts have found failed to justify joinder, Boy Racer explains that users of the BitTorrent protocol have a higher degree of interactivity and engage in "deep and sustained collaboration with their peers," as follows:

> First, the protocol breaks a single large file into a series of smaller distributable pieces. Then, an initial file-provider (the "seeder") intentionally elects to distribute the pieces to third parties. This is called "seeding." Other users ("peers") on the network, download a small "torrent" file that contains directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions in the torrent file to connect to the seeder. When a piece download is complete, the peers automatically become seeders with respect to the downloaded pieces. In other words, each peer in a swarm transforms from a pure downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and distributing pieces of a file. By this mechanism, each peer collaborates with others in the swarm to complete the distribution of a file. A piece shared by the initial seeder or any later seeders will be distributed amongst the peers countless times over– even if the seeder leaves the swarm. Users can be connected to one another over the span of weeks simply via the initial download.[11]

Boy Racer goes on to note:

> The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both intentionally uploading and downloading portions of the file simultaneously. As more peers intentionally join the swarm for the copyrighted works, the likelihood of a successful download increases. Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the

---

[11] *See* Docket No. 3 at 25.

ORDER, *page 3*

> BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads, every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country– although this lawsuit is isolated to peers who are believed to be located exclusively in California.[12]

According to Boy Racer, this greater extent of "cooperation and concerted action" among BitTorrent users than among users of other protocols makes joinder proper here.

Even with the description of the BitTorrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a <u>given</u> swarm. Presumably he does so in response to the concern highlighted by Judge Ryu[13] that users in <u>different</u> swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms.[14] Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these 51 addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols,

---

[12] *See id.* at 26.

[13] *See Pacific Century Intern. Ltd. v. Does 1-101,* Case No. 11-02533, Docket No. 7 (N.D. Cal. Jul. 8, 2011).

[14] *See, e.g.*, Docket No. 3, paragraph 13 ("[the first step in the infringer-identification process is to locate swarms where peers are distributing the copyrighted creative works."); paragraph 15 ("I used all three methods to locate swarms associated with Plaintiff's exclusive license.").

ORDER, *page 4*

merely infringing the same copyrighted work over this period is not enough.[15] Finally, nothing in the BitTorrent architecture changes the fact that each defendant also will likely have a different defense. As the district court in *BMG Music* put it:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.[16]

Boy Racer's motion is therefore GRANTED, but only as to Doe 2 and as follows.

IT IS HEREBY ORDERED that Boy Racer is allowed to serve immediate discovery on Doe 2's ISP listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify Doe 2, including the name, addresses, telephone numbers, and email addresses of Doe 2. Boy Racer's counsel shall issue its subpoena and shall include a copy of this order.

IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon it to serve Doe 2 with a copy of the subpoena and a copy of this order. The ISP may serve Doe 2 using any reasonable means, including written notice sent to Doe 2's last known address, transmitted either by first-class mail or via overnight service. The ISP and Doe 2 each shall have 30 days from the date of service to file any motions in this court contesting the subpoena (including a motion to quash or modify the subpoena). If that 30-day period lapses without Doe 2 or the ISP contesting the subpoena, the ISP shall have 10 days to produce to Boy Racer the information responsive to the subpoena with respect to Doe 2.

IT IS FURTHER ORDERED that the ISP shall not assess any charge to Boy Racer in advance of providing the information requested in the subpoena, and that the ISP that receives a subpoena and elects to charge for ths costs of production shall provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

IT IS FURTHER ORDERED that the ISP shall preserve all subpoenaed information pending

---

[15] *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 16).

[16] *See BMG Music v. Does 1-203,* Case No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

1  the ISP delivering such information to Boy Racer or the final resolution of a timely filed and granted
2  motion to quash the subpoena with respect to such information.
3      IT IS FURTHER ORDERED that any information disclosed to Boy Racer in response to a
4  subpoena may be used by Boy Racer solely for the purpose of protecting its rights under the
5  Copyright Act, 17 U.S.C. § 101 et seq.
6      IT IS FURTHER RECOMMENDED that Does 3-52 be severed from this action and Boy
7  Racer's action against Does 3-52 be dismissed without prejudice.  The undersigned further
8  recommends that if Boy Racer refiles separate complaints against Does 3-52 within 20 days of this
9  order, such actions should be deemed a continuation of the original action for purposes of the statute
10 of limitations.
11     **IT IS SO ORDERED.**
12 Dated:  August 5, 2011

                    PAUL S. GREWAL
                    United States Magistrate Judge